UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHNATHAN HILL, | 1:13-cv-00386-EPG-PC |
| Plaintiff, | |
| vs. | PRETRIAL ORDER |
| C/O J. CLARK and | **Motions in Limine Deadline**:  **November 23, 2015** |
| C/O A. RIVAS, | **Opposition to Motions in Limine Deadline**:  **December 14, 2015** |
| Defendants. | **Other Pretrial Submissions**:  **December 14, 2015** |
| | **Telephonic Trial Confirmation Hearing**:  **November 19, 2015, at 9:30 a.m. in Courtroom 10 (EPG)** |
| | **Jury Trial**:  **January 5, 2016, at 8:30 a.m. in Courtroom 10 (EPG)** |

This civil rights action, brought pursuant to 42 U.S.C. § 1983, proceeds on the original Complaint filed by state prisoner Johnathan Hill ("Plaintiff") on March 18, 2013, against defendant Correctional Officer (C/O) J. Clark for use of excessive force, and defendant C/O A. Rivas for failure to protect Plaintiff, in violation of the Eighth Amendment.[1]   (ECF No. 1.)

---

[1] On January 24, 2014, the Court issued an order dismissing all other claims and defendants from this action for failure to state a claim.  (ECF No. 17.)  The Court's order dismissed defendants C/O L. Aragon, C/O A. Tirado, C/O J. Magana, Sergeant W. Rasley, C/O Flores, and the Doe Defendants from this action based on Plaintiff's failure to state any claims upon which relief may be granted against them under § 1983.

This case is presently set for jury trial on January 5, 2016, before Magistrate Judge Erica P. Grosjean.[2]  Note that the Court has indicated a willingness to hold trial on an alternate date in January to accommodate holiday scheduled, namely January 12, 2016 (Tuesday), January 20, 2016 (Wednesday), or January 26, 2016 (Tuesday).  A telephonic trial confirmation hearing is scheduled for November 19, 2015 before Magistrate Judge Grosjean.

On September 10, 2015, Plaintiff filed his pretrial statement.  (ECF No. 49.)   On October 28, 2015, Defendants filed their pretrial statement.  (ECF No. 54.)  On October 30, 2015, Defendants filed an amended pretrial statement.  (ECF No. 56.)  Having reviewed the pretrial statements and the remainder of the file, the Court now issues a pretrial order.

## I.   Jurisdiction and Venue

The Court's subject matter jurisdiction is based on 28 U.S.C. §§ 1331 and 1342. Because the events at issue allegedly took place in Corcoran, California, venue is proper in the Eastern District of California, Fresno Division.  There is no dispute concerning jurisdiction or venue.

## II.   Jury Trial

Both parties have demanded a trial by jury.

## III.   Facts and Evidentiary Issues

### A.   Undisputed Facts

1.   Defendants Rivas and Clark came to Plaintiff's cell door and asked him if he wanted to come out and talk to a cell mate (celly), and Plaintiff responded yes.

2.   Defendants Rivas and Clark escorted Plaintiff from his cell to talk to the celly.

3.   Defendants Rivas and Clark searched Plaintiff's cell.

---

[2] On July 31, 2015, defendants Clark and Rivas consented to the jurisdiction of a Magistrate Judge under 28 U.S.C. § 636(c).  (ECF No. 42.)  On August 5, 2015, Plaintiff consented to the jurisdiction of a Magistrate Judge under 29 U.S.C. § 636(c).  (ECF No. 43.)  On August 10, 2015, due to consent by the parties, this case was reassigned to Magistrate Judge Gary L. Austin for all further proceedings, including trial and entry of final judgment.  (ECF No. 45.)  On October 13, 2015, due to the retirement of Magistrate Judge Austin, this case was reassigned from Magistrate Judge Austin to Magistrate Judge Erica P. Grojean.  (ECF No. 51.)

4.      Defendants Rivas and Clark returned to the holding cell where Plaintiff was being held, and escorted him back to his cell.

5.      When they reached the door to Plaintiff's cell, Plaintiff noticed that his cell had been searched.

6.      Plaintiff told defendant Clark that he was not going to give the handcuffs back.

**B.**      **Defendants' Additional Proposed Undisputed Facts**

1.      Plaintiff Jonathan Hill is a convicted felon properly in the custody of the California Department of Corrections and Rehabilitation (CDCR).

2.      At all times relevant to this case, Plaintiff was housed at CSP-Corcoran in cell 221 in Facility 3A, Building 4 (3A04).

3.      3A04 is an Administrative Segregation Unit (Ad Seg).

4.      Cell 221 is on the second floor of the housing unit.

5.      At all times relevant to this case, Defendants were assigned to work in 3A04, where Officer Rivas was a Search and Escort Officer, and Officer Clark was a Floor Officer.

6.      On January 29, 2012, Plaintiff was removed from his cell to talk to another inmate about whether they were compatible to live together.

7.      When Plaintiff and the other inmate were finished talking, Officer Rivas and Officer Clark escorted Plaintiff through 3A04 to return him to his cell.

8.      Escorts of Ad Seg inmates are generally performed by two escorting officers.

9.      The standard procedure was for escorting officers to stay within arms-length of the inmate, with at least one officer keeping his hand on the inmate's arms at all times.

///
///

10.   During the escort, the inmate was required to remain facing forward because from that position, the inmate posed the least risk of harm to the escorting officers.

11.   The standard procedure was also for an Ad Seg inmate to be handcuffed during an escort.

12.   Plaintiff's hands were cuffed behind his back.

13.   These procedures were necessary because Ad Seg is used to house inmates whose conduct in prison had been found to endanger the safety of others or the security of the institution.

14.   Upon arriving cell-front, Plaintiff stopped at the door and noticed that his cell had been searched while he was away.

15.   Plaintiff was upset that his cell had been searched.

16.   Plaintiff began to enter his cell, and stated that he was not going to give back the handcuffs.

17.   Plaintiff knows he is not allowed to keep handcuffs in his cell.

18.   The handcuffs were made of metal, which Plaintiff also knows he is not allowed to keep in his cell.

19.   Because Plaintiff was agitated and threatened to keep the handcuffs, Officer Clark quickly decided not to place Plaintiff back into the cell.

20.   Officer Clark ordered Plaintiff to step back away from the cell door.

21.   Instead, Plaintiff sat down on the floor in the doorway of his cell.

22.   Officer Clark continued to maintain physical control of Plaintiff with both hands.

23.   Plaintiff began yelling for the building sergeant.

24.   Someone sounded an alarm, and other staff members from the building, including Lieutenant Weatherford, Sergeant Rasley, Officer Aragon, Officer Tirado, and Officer Magana responded.

///

4

25.   Plaintiff was escorted downstairs into the 3A04 dayroom, where he was medically evaluated by Psychiatric Technician (PT) Lewis.

26.   Plaintiff did not tell PT Lewis that he was injured.

27.   PT Lewis physically examined Plaintiff's entire body using a flashlight, and did not find any injuries.

28.   PT Lewis completed a Medical Report of Injury or Unusual Occurrence and did not note any injuries to Plaintiff on that form.

29.   Following the medical evaluation, Plaintiff was escorted back to his cell without any further incident.

30.   No Crime/Incident Report (CDCR 837) was created documenting use of force by any staff relating to this incident.

31.   Plaintiff did not receive a Rules Violation Report (CDCR 115) related to this incident.

32.   On February 1, 2012, Plaintiff complained of an injury that he wanted to document and he requested to be medically evaluated.

33.   At approximately 11:50 a.m., PT Zeller conducted a physical examination of Plaintiff and completed a Medical Report of Injury or Unusual Occurrence.

34.   On the form, PT Zeller noted a .25 millimeter scratch on Plaintiff's left forearm.

35.   PT Zeller did not note any other injuries to Plaintiff's body.

36.   At approximately 2:00 p.m., Plaintiff was placed on lanyard status after he again refused to return handcuffs after being escorted to his cell.

37.   Later that same day, Plaintiff again complained of an injury that he wanted to document and he requested another medical evaluation.

38.   At approximately 5:30 p.m., Licensed Vocational Nurse (LVN) Gonzales conducted a physical examination of Plaintiff and completed a Medical Report of Injury or Unusual Occurrence.

39.     On that form, LVN Gonzales noted a scratch to Plaintiff's left forearm.

40.     LVN Gonzales did note any other injuries to Plaintiff's body.

41.     Later that evening, Plaintiff again complained that he had injuries that were several days old.

42.     At approximately 8:35 p.m., Plaintiff went to the medical clinic, where he was physically examined by Registered Nurse (RN) Johnson.

43.     RN Johnson noted only a small abrasion to Plaintiff's right wrist.

44.     RN Johnson noted that Plaintiff had no other abrasions, lacerations, bruises, contusions.

45.     Dr. Gill also examined Plaintiff during his visit to the medical clinic.

46.     Dr. Gill noted only a minor abrasion to Plaintiff's left wrist.

C.      **Plaintiff's Additional Proposed Undisputed Facts**

1.      After Plaintiff told defendant Clark that he was not going to give back the handcuffs, Clark walked into the cell and grabbed the handcuffs.

2.      Defendant Clark then pulled Plaintiff backwards towards his cell door.

D.      **Disputed Facts**

1.      Whether, on January 29, 2012, after Plaintiff sat down on the ground in the doorway of his cell, he voluntarily lay down on the ground and rolled himself into a prone position.

2.      Whether, after Plaintiff sat down, and then lay down, the only physical contact Officer Clark had with him was to maintain control of Plaintiff using both hands.

3.      Whether, after Plaintiff sat down on the ground in the doorway of his cell, Officer Clark "sumo pushed" Plaintiff's head between his legs and down to the floor.

4.      Whether Officer Clark then wrestled on the ground with Plaintiff in an attempt to force Plaintiff to go prone.

///

5.     Whether Officer Clark kneeled on Plaintiff's head and face, pushing Plaintiff's head into the floor with all of his might.

6.     Whether Officer Clark told Officer Rivas to grab Plaintiff's legs.

7.     Whether Officer Rivas grabbed Plaintiff's legs, lifted them in the air, and held them there for an extended period of time.

8.     Whether Officer Clark repeatedly hit Plaintiff in the head.

9.     Whether Officer Rivas failed to protect Plaintiff from a known risk of harm on January 29, 2012.

**E.     Plaintiff's Additional Disputed Facts**

1.     Whether Defendants tore up Plaintiff's cell.

2.     Whether defendant Clark wrestled Plaintiff over onto his right side, and Plaintiff's body would not go because his door-frame was in the way.

3.     Whether Plaintiff told defendant Clark that he was crushing Plaintiff's glasses, to which Clark responded, "They're state glasses, you can get some more."

4.     Whether Plaintiff suffered any injuries.

**F.     Defendants' Disputed Evidentiary Issues**

1.     Whether evidence concerning claims and Defendants that have been dismissed  is admissible for any purpose. In its screening order, the Court dismissed Plaintiff's claims  against Defendant Correctional Officers Flores, Aragon, Tirado, Magana, and Sergeant Rasley.

2.     Whether Plaintiff should be able to offer any opinion testimony concerning his  medical records or medical condition.

3.     Whether Plaintiff should be able to offer any evidence regarding Defendants'  involvement, if any, in other lawsuits, claims, or incidents alleging misconduct.

4.     Whether Plaintiff should be able to offer evidence or testimony regarding any  settlement discussions the parties may have had.

5.      Whether Plaintiff should be able to offer evidence that the State may pay the judgment or reimburse Defendants in the event a judgment is rendered against them.

6.      Whether the abstracts of judgment for Plaintiff or any incarcerated witnesses are admissible for impeachment purposes.

### G.      Plaintiff's Disputed Evidentiary Issues

Plaintiff is not aware of any disputed evidentiary issues.

### H.      Special Factual Information

Not applicable.

## IV.   Relief Sought

Plaintiff seeks compensatory and punitive damages from each defendant, court costs, and attorney's fees, should he request an attorney. Defendants pray for judgment in their favor with an award of costs.

## V.    Points of Law

This action now proceeds only on Plaintiff's § 1983 claim against defendant Correctional Officer (C/O) J. Clark for use of excessive force, and defendant C/O A. Rivas for failure to protect Plaintiff, in violation of the Eighth Amendment. No other claims are at issue.

### A.      Imposition of Liability Under Section 1983

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. "Section 1983 . . . creates a cause of action for violations of the federal Constitution and laws." Sweaney v. Ada County, Idaho, 119 F.3d 1385, 1391 (9th Cir. 1997) (internal quotations omitted). "To the extent that the violation of a state law amounts to the deprivation of a state-created interest that reaches beyond that guaranteed by the federal Constitution, Section 1983 offers no redress." Id.

Section 1983 plainly requires that there be an actual connection or link between the actions of Defendants and the deprivation alleged to have been suffered by Plaintiff.  See Monell v.  Department of Social Services, 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976).  "A person deprives another of a constitutional right, where that person 'does an affirmative act, participates in another's affirmative acts, or omits to perform an act which [that person] is legally required to do that causes the deprivation of which complaint is made.'" Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).  "[T]he 'requisite causal connection can be established not only by some kind of direct, personal participation in the deprivation, but also by setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury.'"  Id. at 743-44.

## B.  **Excessive Force**

"What is necessary to show sufficient harm for purposes of the Cruel and Unusual Punishments Clause [of the Eighth Amendment] depends upon the claim at issue . . . ."  Hudson v. McMillian, 503 U.S. 1, 8 (1992).  "The objective component of an Eighth Amendment claim is . . . contextual and responsive to contemporary standards of decency."  Id. (internal quotation marks and citations omitted).  The malicious and sadistic use of force to cause harm always violates contemporary standards of decency, regardless of whether or not significant injury is evident.  Id. at 9; see also Oliver v. Keller, 289 F.3d 623, 628 (9th Cir. 2002) (Eighth Amendment excessive force standard examines de minimis uses of force, not de minimis injuries)).  However, not "every malevolent touch by a prison guard gives rise to a federal cause of action."  Id. at 9.  "The Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'"  Id. at 9-10 (internal quotations marks and citations omitted).  "Prison administrators ... should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security."  Bell v. Wolfish, 441 U.S. 520, 547 (1979); Whitley v. Albers, 475 U.S. 312, 320-322 (1986).

"[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Id. at 7. "In determining whether the use of force was wanton and unnecessary, it may also be proper to evaluate the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." Id. (internal quotation marks and citations omitted). "The absence of serious injury is . . . relevant to the Eighth Amendment inquiry, but does not end it." Id.

### C.   **Failure to Protect**

The Eighth Amendment requires prison officials to take reasonable measures to guarantee the safety of inmates, which has been interpreted to include a duty to protect prisoners. Farmer v. Brennan, 511 U.S. 825, 832-33 (1994); Hearns v. Terhune, 413 F.3d 1036, 1040 (9th Cir. 2005). A prisoner seeking relief for an Eighth Amendment violation must show that the officials acted with deliberate indifference to the threat of serious harm or injury to an inmate. Gibson v. County of Washoe, 290 F.3d 1175, 1187 (9th Cir. 2002). "Deliberate indifference" has both subjective and objective components. A prison official must "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and . . . must also draw the inference." Farmer, 511 U.S. at 837. Liability may follow only if a prison official "knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." Id. at 847.

### D.   **Damages Issues**

#### 1.   **Nominal Damages**

If the jury finds the plaintiff has proved his claim for violation of his constitutional rights, "nominal damages must be awarded 'as a symbolic vindication of [the plaintiff's] constitutional right' whether or not the constitutional violation causes any actual damage." George v. City of Long Beach, 973 F.2d 706, 708 (9th Cir. 1992) (quoting Floyd v. Laws, 929 F.2d 1390, 1401 (9th Cir. 1991)); Schneider v. County of San Diego, 285 F.3d 784, 794 (9th

Cir. 2002). "If the jury finds a constitutional violation, an award of nominal damages is mandatory, not permissive," <u>Floyd</u>, 929 F.2d at 1402-03, and the amount of actual damages a jury chooses to award, if any at all, is irrelevant to the plaintiff's entitlement to nominal damages, <u>Schneider</u>, 285 F.3d at 794-95; <u>Floyd</u> at 1402-03.

### 2. **Punitive Damages**

Punitive damages are available in section 1983 actions. <u>Dang v. Cross</u>, 422 F.3d 800, 807 (9th Cir. 2005) (citations omitted). "Punitive damages serve to punish the defendant for wrongful conduct and to deter the defendant and others from repeating the wrong." <u>Id.</u> at 810. The plaintiff has the burden of proving what, if any, punitive damages should be awarded by a preponderance of the evidence, <u>id.</u> at 807, and an award of punitive damages is predicated on the plaintiff proving that the defendant's conduct was malicious, wanton, or oppressive, or in reckless disregard of the plaintiff's rights, <u>Smith v. Wade</u>, 461 U.S. 30, 56, 103 S.Ct. 1625 (1986); <u>Dang</u> at 807-09.

### 3. **Damages for Mental and Emotional Injuries - Physical Injury Requirement**

The Prison Litigation Reform Act provides that "[n]o Federal civil action may be brought by a prisoner confined in jail, prison, or other correctional facility, for mental and emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). The physical injury "need not be significant but must be more than <u>de minimis</u>." <u>Oliver</u>, 289 F.3d at 627 (back and leg pain and canker sore <u>de minimis</u>); <u>see also</u> <u>Pierce v. County of Orange</u>, 526 F.3d 1190, 1211-13 (9th Cir. 2008) (bladder infections and bed sores, which pose significant pain and health risks to paraplegics such as the plaintiff, were not <u>de minimis</u>). The physical injury requirement applies only to claims for mental or emotional injuries and does not bar claims for compensatory, nominal, or punitive damages. <u>Id</u>. at 630.

### E. **Qualified Immunity**

"Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and

(2) that the right was 'clearly established' at the time of the challenged conduct." <u>Ashcroft v. al-Kidd</u>, 563 U.S. 731, ___, 131 S.Ct. 2074, 2080 (2011) (citing <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818, 102 S.Ct. 2727, (1982)).  This immunity protects "all but the plainly incompetent or those who knowingly violate the law." <u>Malley v. Briggs</u>, 475 U.S. 335, 341, 106 S.Ct. 1092. (1986).

When considering a claim for qualified immunity, courts engage in a two-part inquiry: whether the facts show that the defendant violated a constitutional right, and whether the right was clearly established at the time of the defendant's purported misconduct. <u>Delia v. City of Rialto</u>, 621 F.3d 1069, 1074 (9th Cir.2010) (quoting <u>Pearson v. Callahan</u>, 555 U.S. 223, 232, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009)).  A right is clearly established if the contours of the right are so clear that a reasonable official would understand his conduct was unlawful in the situation he confronted. <u>Dunn v. Castro</u>, 621 F.3d 1196, 1199–1200 (9th Cir.2010) (citation omitted) (internal quotation marks omitted).  This standard ensures that government officials are on notice of the illegality of their conduct before they are subjected to suit. <u>Hope v. Pelzer</u>, 536 U.S. 730, 739, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002) (citation omitted).  "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful...." <u>Id.</u>

The Supreme Court found that the sequence of this two-step inquiry is no longer "an inflexible requirement." <u>Pearson</u>, 555 U.S. at 236, 129 S.Ct. 808.  Thus, it is within the Court's discretion to decide which step to address first. <u>Id.</u>; <u>see</u> <u>Delia</u>, 621 F.3d at 1075; <u>Bull v. City & County of San Francisco</u>, 595 F.3d 964, 971 (9th Cir.2010).  If the defendants' conduct does not amount to a constitutional violation, or the violation was not clearly established, or the defendants' actions reflect a reasonable mistake as to what the law requires, they are entitled to qualified immunity. <u>Blankenhorn v. City of Orange</u>, 485 F.3d 463, 471 (9th Cir.2007); <u>see</u> <u>James v. Rowlands</u>, 606 F.3d 646, 651 (9th Cir.2010) (quoting <u>Pearson</u>, 555 U.S. at 235, 129 S.Ct. 808).

///

///

### F.      Federal Rules of Evidence – Prior Conviction and Bad Acts

Defendants assert that they will not try to admit Plaintiff's abstract of judgment, or that of any incarcerated witness, if each answers truthfully that they have been convicted of a felony.

Defendants shall file a short brief at the time for the filing of motions *in limine*, explaining what prior act they want to admit, the type of felony, the date of the felony, and an explanation why disclosure of the act or felony is more probative that prejudicial.

## VI.   Abandoned Issues

Defendants have not abandoned any issues or affirmative defenses.   Plaintiff has abandoned his deliberate indifference claim brought in the initial Complaint.

## VII.   Witnesses

The following is a list of witnesses that the parties expect to call at trial, including rebuttal and impeachment witnesses.   NO WITNESS, OTHER THAN THOSE LISTED IN THIS SECTION, MAY BE CALLED AT TRIAL UNLESS THE PARTIES STIPULATE OR UPON A SHOWING THAT THIS ORDER SHOULD BE MODIFIED TO PREVENT "MANIFEST INJUSTICE."  Fed. R. Civ. P. 16(e); Local Rule 281(b)(10).

### A.      Plaintiff's Witnesses

1.      Himself, Plaintiff Johnathan Hill

2.      Inmate Dewayne Thompson, T-12115

### B.      Defendants' Witnesses

1.      Correctional Officer A. Rivas, Defendant

2.      Correctional Officer J. Clark, Defendant

3.      Correctional Lieutenant K. Weatherford, CSP-Corcoran

4.      Correctional Lieutenant E. Silva, CSP-Corcoran

5.      Correctional Sergeant T. Lawson, CSP-Corcoran

6.      Correctional Sergeant W. Rasley, CSP-Corcoran

7.      Correctional Officer L. Aragon, CSP-Corcoran

8.      Correctional Officer A. Tirado, CSP-Corcoran

9.      Correctional Officer J. Magana, CSP-Corcoran

10.     Correctional Officer L. Flores, CSP-Corcoran

11.     Dr. R. Gill, CSP-Corcoran

12.     Registered Nurse J. Johnson, CSP-Corcoran

13.     Licensed Vocational Nurse S. Gonzales, CSP-Corcoran

14.     Psychiatric Technician M. Lewis, CSP-Corcoran

15.     Psychiatric Technician T. Zellers, CSP-Corcoran

To avoid any unnecessary delay and expense, Defendants request that documents from Plaintiff's central and medical files, and those of any inmate witnesses, be authenticated by declarations from the appropriate records custodians. If the documents are not authenticated in this manner, Defendants would call the following additional witnesses:

16.     The custodian of records for Plaintiff's central inmate file

17.     The custodian of records for Plaintiff's medical file

18.     The custodians of records who maintain the central inmate files for any inmate witnesses

## VIII.   **Exhibits**

The following is a list of documents or other exhibits that the parties expect to offer at trial.   NO EXHIBIT, OTHER THAN THOSE LISTED IN THIS SECTION, MAY BE ADMITTED UNLESS THE PARTIES STIPULATE OR UPON A SHOWING THAT THIS ORDER SHOULD BE MODIFIED TO PREVENT "MANIFEST INJUSTICE."  Fed. R. Civ. P. 16(e); Local Rule 281(b)(11).

**A.**     **Plaintiff's Exhibits**

1.      Plaintiff's initial Complaint.

2.      Defendant Rivas' responses to interrogatories.

3.      Defendants' Answer and demand for jury trial.

4.      Defendants' responses to Plaintiff's requests for production of documents.

///

14

5.   Letters, grievances, and inmate appeals submitted by Plaintiff in connection with the subject matter of this lawsuit.

6.   All documents in Plaintiff's possession related to the issues that Plaintiff alleges are the subject matter of this lawsuit, including damages.

7.   All written statements that Plaintiff has received from any person concerning the issues he claims are the subject matter of this lawsuit, including damages.

8.   All documents in Plaintiff's possession that he intends to use at trial, including medical records.

9.   Operational Procedure No. 220.  Administrative Segregation Units. ASU.

**B.   Defendants' Exhibits**

1.   Plaintiff's Abstract of Judgment.

2.   Inmate/Parolee Appeal Log No. COR-12-01099 (CDCR 602).

3.   Confidential Supplement to Inmate/Parolee Appeal Log No. CSPC-7-12-01099, dated March 23, 2012 (redacted).

4.   Use of Force video interview prepared by Lieutenant E. Silva and Sergeant T. Lawson in connection with Inmate/Parolee Appeal Log No. CSPC-7-12-01099.

5.   Medical Report of Injury or Unusual Occurrence (CDCR 7219), prepared by Psychiatric Technician M. Lewis, dated January 29, 2012.

6.   Medical Report of Injury or Unusual Occurrence (CDCR 7219), prepared by Psychiatric Technician T. Zeller, dated February 1, 2012.

7.   Medical Report of Injury or Unusual Occurrence (CDCR 7219), prepared by Licensed Vocational Nurse S. Gonzales, dated February 1, 2012.

8.   PPAS/Custody Sign-In/Out Sheet, dated January 29, 2012, for 3A04 Third Watch.

9.      Patient/Inmate Health Care Appeal Log No. COR SC 12001170/COR HC 12049495 (CDCR 602 HC).

10.     Cell Search/Locker Search/Property Removed Form, dated January 29, 2012.

11.     DVD Interview of Inmate Hill, conducted by Lieutenant E. Silva, dated February 1, 2012.

12.     A diagram of CSP-Corcoran's Facility 3A04.

13.     Photographs of Facility 3A near the location of the incident at issue

14.     Documents from Plaintiff's medical file, including:

(1)     Triage and Treatment Services Flow Sheet, prepared by Registered Nurse J. Johnson, dated February 1, 2012.

(2)     Medical Progress Note, prepared by Dr. R. Gill, dated February 1, 2012.

(3)     Health Care Services Request Form, prepared by Plaintiff, dated January 30, 2012.

15.     Sections of Title 15 of the California Code of Regulations in effect in 2012 governing the use of force and inmate escorts.

16.     Sections of the Department Operations Manual (DOM) in effect in 2012 governing the use of force and inmate escorts.

17.     Operational Procedures (OP) in place at CSP-Corcoran in 2012 governing the use of force and inmate escorts.

18.     Post Orders for the positions of CSP-Corcoran Ad Seg Search and Escort Officer and Floor Officer, in effect in January 2012.

19.     Select excerpts from Plaintiff's deposition, taken January 29, 2015.

20.     Select excerpts from Plaintiff's complaint (ECF No. 1).

21.     Abstract of Judgment for Plaintiff's inmate witness, Dewayne Thompson.

///

16

## IX.   **Discovery Documents To Be Used At Trial**

    A.    Plaintiff expects to use these Discovery Documents:

        1.    Plaintiff's First Set of Interrogatories, p. 2 lines 10-20; p.3 lines 1-6.

        2.    Plaintiff's Second Set of Interrogatories, p. 1 lines 24, 27; p. 2 lines 2, 4, 6, 13, 15, 21-22, 24-26; p. 3 lines 5-6, 12.

        3.    Plaintiff's Third Set of Interrogatories, p. 2 lines 2-3, 5-6, 8, 15-16, 18, 20, 22; p. 3 line 3.

        4.    Plaintiff's Fourth Set of Interrogatories, p. 1 line 26; p. 2 lines 7-8, 10, 17-18.

    B.    If Plaintiff introduces any of Defendants' discovery responses into evidence, as his pretrial statement suggests he will, see ECF No. 49 at 7-9, Defendants may admit any remaining portion of those responses that are needed to place the evidence into context. See Fed. R. Evid. 106.

## X.   **Further Discovery or Motions**

### A.   **Plaintiff**

Plaintiff asserts that he may have to conduct additional discovery to locate one of his witnesses.  Plaintiff asserts that he did not do this during initial discovery because there was no sure chance that the witness would be at the discovered address today.  No further discovery is needed to locate Plaintiff's incarcerated witness.  Plaintiff has identified the witness as Dewayne Thompson, T-12115.  With this information, the Court has determined that Dewayne Thompson is presently housed at California State Prison-Sacramento in Represa, California.

Also, Plaintiff intends to request a Court-appointed attorney by a proper motion.  The Court will consider such motion once filed.

### B.   **Defendants**

Defendants anticipate filing motions *in limine*.  If appropriate, Defendants will also move for dismissal under Rule 50 of the Federal Rules of Civil Procedure at the close of evidence.

///

To the extent Plaintiff has indicated in his pretrial statement that he would like to conduct additional discovery, Defendants argue that his request should be denied. Defendants argue that the Court's discovery and scheduling order afforded Plaintiff ample time – approximately eight months – to conduct discovery in this case. Defendants assert that indeed, Plaintiff propounded multiple sets of interrogatories and requests for production of documents during that time. Defendants argue that discovery is now closed, and it should remain closed.

## XI.   Stipulations

### A.        Plaintiff

No stipulations have been requested or offered for pretrial or trial purposes.

### B.        Defendants

Defendants will confer with Plaintiff about stipulating to the authenticity of the documents identified in Sections 10 and 11, above. Defendants will also confer with Plaintiff about preparing joint trial exhibits.

In their pretrial statement, Defendants indicated they were willing to stipulate they were acting under color of state law while on duty on May 26, 2009. At the telephonic hearing on November 19, 2014, Plaintiff so stipulated. Thus, the parties have agreed that Defendants Fernando and Jericoff acted under color of state law while on duty on May 26, 2009.

### C.   *CAUTION*: The parties are cautioned that if any stipulation is obtained in the future, it must be in writing, and must be provided to the Courtroom Clerk no later than **December 14, 2015 at 12:00 p.m (noon).**

## XII.   Amendments/Dismissals

### A.   Plaintiff

There were not any requested amendments to pleadings, dismissals, additions or substitutions of parties or dispositions as to defaulting parties, on Plaintiff's part.

### B.   Defendants

The Court's screening order dismissed Plaintiff's Eighth Amendment claims against defendants Flores, Aragon, Tirado, Magana, and Rasley.

///

**XIII.** **Settlement Negotiations**

    **A.** **Plaintiff**

Plaintiff believes that settlement negotiations between the parties, and/or a Court settlement conference under Local Rule 270, would be helpful.

    **B.** **Defendants**

Defendants report that they considered the possibility of settling this case out-of-court for a nominal sum. However, Plaintiff owes approximately $10,200 in restitution, which makes resolution of this case without a trial very unlikely. Defendants therefore decided that this case was not appropriate for settlement, and that the case should instead be tried to a jury.

**XIV.** **Agreed Statement**

Plaintiff does not know whether presentation of all or part of the action upon an Agreed Statement of Facts is feasible and advisable, and may be redundant in light of Plaintiff's undisputed facts above.

Defendants are willing to prepare a proposed agreed statement of the case.

**XV.** **Separate Trial Of Issues**

Plaintiff does not know whether separate trials of any of the issues is feasible and advisable.

Defendants request that the trial be bifurcated, with the issue of punitive damages being tried separately, if necessary.

The Court will hear argument on bifurcation at the Trial Confirmation Hearing on November 19, 2015.

**XVI.** **Impartial Experts - Limitation Of Experts**

Plaintiff does not know whether appointment by the Court of impartial expert witnesses or limitation of the number of expert witnesses is advisable.

Defendants do not anticipate a need for the Court to appoint any impartial expert witnesses, or to place any limitation of the number of expert witnesses.

///

///

**XVII.**  <u>**Attorneys' Fees**</u>

    **A.**    <u>**Plaintiff**</u>

Not applicable.  Because Plaintiff is not represented by an attorney, he is not entitled to recover attorney's fees if he prevails.  <u>Gonzales v. Kangas</u>, 814 F.2d 1411, 1412 (9th Cir. 1987).

    **B.**    <u>**Defendants**</u>

If Defendants win at trial, they will request an award of costs, but not attorney's fees.

**XVIII.** <u>**Trial Exhibits**</u>

Plaintiff does not anticipate needing special handling of any of his exhibits.

Defendants will have exhibits they wish to present on the Court's ELMO projector and AV equipment.

The practice of the Court is to either return trial exhibits to the parties or discard them after trial.  It is the parties' responsibility to retain exhibits for purposes of appeal.

**XIX.** <u>**Miscellaneous**</u>

Defendants assert that trial will be expedited if Plaintiff stipulates to the authenticity of the records identified in Sections 10 and 11, above.

**XX.** <u>**Further Trial Preparation**</u>

    **A.**    <u>**Motions *In Limine* Hearing and Briefing Schedule**</u>

Any party may file a motion *in limine*, which is a procedural mechanism to limit in advance testimony or evidence in a particular area.  <u>U.S. v. Heller</u>, 551 F.3d 1108, 1111 (9th Cir. 2009) (quotation marks omitted).  In the case of a jury trial, the Court's ruling gives Plaintiff and Defendants' counsel advance notice of the scope of certain evidence so that admissibility is settled before attempted use of the evidence before the jury.  <u>Id.</u> at 1111-1112 (quotation marks omitted).

All motions *in limine* must be served on the other party, and filed with the Court, by **November 23, 2015.**  Any motion *in limine* must clearly identify the nature of the evidence that the moving party seeks to prohibit the other side from offering at trial.

///

Any opposition to a motion *in limine* must be served on the other party, and filed with the Court, by **December 12, 2015**.

If any party files a motion *in limine*, the Court will hear and decide such motions on the morning of trial at 8:30 a.m.

**Whether or not a party files a motion *in limine*, that party may still object to the introduction of evidence during the trial.**

**B.     Other**

The parties are relieved of their obligation under Local Rule 285 to file trial briefs.  If they wish to file trial briefs, they must do so on or before **December 14, 2015**.

The Court will prepare the verdict form, which the parties will have the opportunity to review on the morning of trial.  If the parties wish to submit a proposed verdict form for consideration, they must do so on or before **December 14, 2015**.

If Plaintiff wishes to file proposed jury instructions, he must do so on or before **December 14, 2015**.  Defendants shall file proposed jury instructions as provided in Local Rule 163 on or before **December 14, 2015**.  In selecting proposed instructions, the parties shall use Ninth Circuit Model Civil Jury Instructions to the extent possible.  All jury instructions must be submitted in duplicate: One set will indicate which party proposes the instruction, with each instruction numbered or lettered, and containing citation of supporting authority, and the customary legend, i.e., "Given, Given as Modified, or Refused," showing the Court's action, with regard to each instruction.  One set will be an exact duplicate of the first, except it will not contain any identification of the party offering the instruction or supporting authority or the customary legend of the Court's disposition.  Defendants shall provide the Court with a copy of their proposed jury instructions via e-mail at: **epgorders@caed.uscourts.gov.**

Proposed voir dire questions, if any, shall be filed on or before **December 14, 2015**. Local Rule 162.1.

The parties may serve and file a non-argumentative, brief statement of the case which is suitable for reading to the jury at the outset of jury selection on or before **December 14, 2015**. The Court will consider the parties' statements but will draft its own statement.  The parties will

be provided with the opportunity to review the Court's prepared statement on the morning of trial.

The original and two copies of all trial exhibits along with exhibit lists shall be submitted to Courtroom Deputy Amanda Martinez no later than **December 14, 2015**.  All of Plaintiff's exhibits shall be pre-marked with the prefix "PX" and numbered sequentially beginning with 100 (e.g., PX-100, PX-101, etc.).  All of Defendants' exhibits shall be pre-marked with the prefix "DX" and numbered sequentially beginning with 200 (e.g., DX-200, DX 201, etc.).

Any party wishing to use a videotape or DVD for any purpose during trial shall lodge a copy of the videotape with Courtroom Deputy Amanda Martinez by 4:00 p.m. on **December 14, 2015**.  If a written transcript of audible words on the tape or DVD is available, the Court requests that the transcript be lodged with the Court, solely for the aid of the Court.

If any party intends to use a laptop computer for presentation of evidence or intends to use any other audio/visual equipment belonging to the Court, **that party shall** contact Courtroom Deputy Amanda Martinez at least one week prior to trial so that any necessary arrangements and/or training may be scheduled.

## XXI.   Objections to Pretrial Order

Any party may, within **ten (10) calendar days** after the date of service of this Order, file and serve written objections to any of the provisions of this Order.  Such objections shall specify the requested modifications, corrections, additions or deletions.

Failure to comply with all provisions of this order may be grounds for the imposition of sanctions on any and all counsel as well as on any party who causes non-compliance with this order.

IT IS SO ORDERED.

Dated:   **November 2, 2015**          /s/ Erica P. Grosjean

UNITED STATES MAGISTRATE JUDGE

22